*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILL P. MITCHELL,

        Plaintiff-Appellant,

v

BRYAN J. MITCHELL,

        Defendant-Appellee.

UNPUBLISHED
October 15, 2020

No. 346774; 349209
Marquette Circuit Court
LC No. 11-048682-DM

Before: MURRAY, C.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals[1] involving postjudgment actions to enforce an amended judgment of divorce, in Docket No. 346774, plaintiff appeals as of right[2] the trial court's order granting in part defendant's motion for reconsideration of the trial court's previous judgment and order in favor of plaintiff for $289,442.90. In Docket No. 349209, plaintiff appeals as of right the trial court's order denying her motion for sanctions and for reconsideration of the trial court's earlier order granting in part and denying in part plaintiff's motion to rescind the temporary spousal support order and for retroactive enforcement of the rescission. For the reasons stated in this

---

[1] *Mitchell v Mitchell*, unpublished order of the Court of Appeals, entered June 14, 2019 (Docket Nos. 346774 and 349209).

[2] We have reviewed defendant's claim that we do not have jurisdiction as of right because the orders appealed by plaintiff were not "final orders" under the court rules. We disagree. The October 30, 2018 order was appealable as of right because it modified a term of the final judgment regarding the Saux Head property entered on September 17, 2018, under MCR 7.202(6)(a)(i). The May 17, 2019 order was appealable as of right because it denied plaintiff's request for attorney fees as sanctions, a final order under MCR 7.202(6)(a)(iv). Further, even if they were not appealable by right, we would exercise our discretion to treat the claims of appeal as applications for leave to appeal, grant leave, and address the issues in the interest of judicial economy. See *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

opinion, we now dismiss in part, affirm in part, reverse in part, and remand for the trial court to clarify or correct its order limiting plaintiff's collection of her money judgment against defendant.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant, in anticipation of their impending divorce, entered into a Voluntary Separation and Property Settlement Agreement ("the settlement agreement"), which, in pertinent part, addressed the marital property on Saux Head Lake Road in Marquette, Michigan ("the Saux Head property"). Despite defendant's attempt to set aside the agreement, the trial court determined that it was a valid and binding contract, and adopted it into the amended judgment of divorce issued on April 10, 2012. The amended judgment of divorce provided that defendant was required to pay plaintiff $3,000 per month in spousal support, but that such support was modifiable. As to the Saux Head property, the amended judgment of divorce adopted the terms of the settlement agreement, which awarded the property to plaintiff, via her trust, but also required defendant to bear sole responsibility for the loans secured by the Saux Head property. The particular loan at issue in this case was from USAmeriBank (USAB), which, at the time of the divorce, had an outstanding balance of about $750,000 to $800,000. The amended judgment of divorce also included language from the settlement agreement requiring defendant to "hold the Plaintiff harmless, and defend and indemnify her" regarding the USAB loan.

Within a few months of entry of the amended judgment of divorce, plaintiff received notice that foreclosure proceedings were being initiated with regard to the Saux Head property because of defendant's failure to pay the loan. Plaintiff successfully obtained an order from the trial court requiring defendant to bring the loan current before the foreclosure sale occurred. When defendant still refused to pay, plaintiff moved the trial court to hold defendant in contempt of court and jail him until he paid. After determining that defendant did not have sufficient funds to pay the debt, and jailing him would stop him from earning money to pay child and spousal support, the trial court denied plaintiff's request to jail defendant. The trial court, in an October 2012 order, though, indicated that plaintiff could still obtain a money judgment against defendant should the Saux Head property be lost for foreclosure.

Later that month, USAB sold the Saux Head property via foreclosure by advertisement. Before the redemption period expired, plaintiff initiated litigation in Case No. 13-51332-NZ, before the same trial court, seeking to set aside the foreclosure sale, reasoning that the loan documents did not contain the power to foreclose by advertisement. Plaintiff's lawsuit against USAB also alleged that plaintiff's signature on the documents had been obtained via fraud, and thus, any claim by USAB should be dismissed. By June 2014, the trial court had granted plaintiff's motion to set aside the foreclosure sale, and USAB had asserted a counterclaim and third-party claim against plaintiff and her trust for a judicial foreclosure and for breach of the guaranties in the loan documents. The litigation in Case No. 13-51332-NZ culminated in a lengthy bench trial that was almost entirely related to plaintiff's claims of fraud. In September 2015, the trial court found that plaintiff had not proven her fraud claims, but that USAB was entitled to judicial foreclosure of the Saux Head property. A judgment of foreclosure against plaintiff and her trust was entered in November 2015, for $1,321,976.90, which consisted of $1,003,931.60 related to the principal of the loan and accrued interest and fees, $287,005.50 in USAB's attorney fees, and $31,039.81 in costs.

-2-

In light of that judgment, plaintiff moved the trial court in this case to order defendant to indemnify her and hold her harmless for her loss of the property and her attorney fees as he was required to do under the amended judgment of divorce. Before responding to plaintiff's motion regarding the Saux Head property, defendant moved the trial court to reduce his spousal support, asserting that he had reduced income and that plaintiff had obtained a valuable legal settlement and her father's estate which increased her income. On February 5, 2016, the trial court entered an order reducing defendant's spousal support to $2,600 per month effective March 1, 2016. The order indicated that it was temporary and was subject to retroactive modification after an evidentiary hearing. The evidentiary hearing regarding both motions were repeatedly adjourned in 2016, once because of defendant's failure to respond to discovery, and another time because he was in the process of replacing counsel.

In October 2016, defendant finally responded to plaintiff's motion regarding the Saux Head property, largely arguing that he was not responsible for indemnifying plaintiff for litigation she initiated and that, because the Saux Head property was fully encumbered at the time of the divorce, plaintiff was not damaged by its loss. Defendant argued that the trial court's October 2012 order restricted plaintiff's damages in the event of foreclosure to moving fees and storage costs.

At a hearing before a referee on March 7, 2017, defendant voluntarily withdrew without prejudice his motion to reduce spousal support. Thus, the planned evidentiary hearing before a referee set to take place on March 13, 2017, would only be for plaintiff's claims regarding the Saux Head property. When that hearing took place, however, the referee found that it did not have enough time to consider the issues presented and ordered that the hearing be continued on another date. Plaintiff prepared a proposed order after that hearing, which did not mention the withdrawal of the spousal support motion, and did not order that the temporary order be rescinded. Thus, the temporary order that defendant pay $2,600 per month remained in place.

Also in March 2017, the judicial foreclosure sale of the Saux Head property occurred. The end result was a deficiency judgment entered against plaintiff and her trust in Case No. 13-51332-NZ for about $500,000.

The referee held the continued evidentiary hearing on June 5, 2017, during which it accepted documentary evidence and testimony from witnesses, including an appraiser who testified as to the value of the Saux Head property. In its findings and recommendation issued after the hearing, the referee determined that, because of the October 2012 order, it could not consider the replacement value of the Saux Head property or plaintiff's legal fees in Case No. 13-51332-NZ. Instead, the referee found that defendant owed plaintiff $15,000 for moving expenses, storage costs, and attorney fees in the present case. Plaintiff objected to those findings and requested a de novo hearing. At that hearing, the trial court indicated its disagreement with the referee about potential damages to plaintiff arising out of Case No. 13-51332-NZ and scheduled an evidentiary hearing on the issue.

In an order entered after the de novo hearing, the trial court held that it agreed with the referee that plaintiff could not obtain the value of the Saux Head property because she was aware that it was fully encumbered at the time of the divorce. The trial court's order also provided that plaintiff's and USAB's legal fees were only collectible under the indemnity and hold-harmless provisions of the amended judgment of divorce to the extent they related to the foreclosure. In

other words, defendant was not required to indemnify plaintiff for prosecuting her fraud claims against USAB.

The first day of the trial court's evidentiary hearing took place in October 2017, during which plaintiff testified about her damages, and defendant presented expert witness testimony regarding reasonable attorney fees related to foreclosure litigation. The trial court scheduled a continued hearing date to complete the testimony of witnesses. Before that occurred, however, plaintiff's attorney, over her objection but with the trial court's permission, withdrew from the case. The trial court adjourned the hearing several times, ultimately providing plaintiff with about 10 months to obtain replacement counsel. When the final day of the evidentiary hearing arrived in September 2018, plaintiff was unrepresented and stated that she had no additional evidence. During both days of the evidentiary hearing the trial court took judicial notice of its own file in Case No. 13-51332-NZ, without objection from the parties.

The trial court issued a written decision later that month, affirming the referee's calculation of moving expenses, storage costs, and attorney fees in this case at $15,000. The trial court also held that plaintiff was entitled to indemnification for the portion of the deficiency judgment against her that was related to the underlying loan and interest for nonpayment by defendant, which the court calculated to be about $215,000. As to attorney fees, the trial court relied on judicial notice of its file in the USAB litigation. The trial court found that $35,000 of USAB's attorney fees were related to the foreclosure litigation, while $23,800 of plaintiff's were. Thus, the trial court issued a money judgment in favor of plaintiff for $289,442.90. Later, the trial court granted in part defendant's motion for reconsideration related to collection of the judgment. Specifically, the trial court agreed with defendant that plaintiff would not be permitted to collect the judgment against defendant until she proved that USAB had begun collection of the deficiency judgment against her. After denying plaintiff's motion to reconsider that order, the appeal in Docket No. 346774 followed.

Then, on March 25, 2019, plaintiff moved the trial court to rescind the temporary spousal support order, arguing that it had erroneously remained in place despite defendant's voluntary withdrawal of the motion. Plaintiff argued that she was entitled to full retroactivity, and thus, an order for defendant to pay all arrearages from failing to tender $3,000 per month since March 1, 2016. Defendant argued that plaintiff was equally at fault for allowing the temporary order to remain in place, and thus, he should not have to pay for any arrearages. In considering the issue, the trial court found that neither party had acted fraudulently, but instead, there had been an oversight because of the litigation focused on the Saux Head property. Therefore, the trial court decided to split the difference by rescinding the temporary order, but only providing retroactivity to September 1, 2017. Plaintiff moved for reconsideration, in which she also noted that the trial court had not addressed her request for sanctions against defendant. On May 17, 2019, the trial court denied plaintiff's motion for reconsideration and for sanctions. The appeal in Docket No. 349209 followed.

## II. DOCKET NO. 346774

### A. DISMISSAL FOR LACK OF TRANSCRIPTS

Certain portions of plaintiff's appeal in Docket No. 346774 must be dismissed because of her failure to provide us with a complete record to review.

"The appellant is responsible for securing the filing of the transcript as provided in this rule." MCR 7.210(B)(1)(a). Specifically, unless excused by an order of the trial court, MCR 7.210(B)(1)(c), or by stipulation of the parties, MCR 7.210(B)(1)(d), the appellant is required to "order from the court reporter or recorder the full transcript of testimony and other proceedings in the trial court or tribunal." MCR 7.210(B)(1)(a). "The obligation to produce the transcripts applies regardless of whether the transcript is directly relevant to the issues on appeal . . . [and t]his Court can refuse to consider issues for which the appellant failed to produce the transcript." *Thompson v Thompson*, 261 Mich App 353, 359 n 1; 683 NW2d 250 (2004). When an appellant fails to provide relevant transcripts, this Court has alternatively held that "[t]he issue is considered abandoned on appeal," *Taylor v Blue Cross/Blue Shield of Mich*, 205 Mich App 644, 654; 517 NW2d 864 (1994), or that "it constitutes a waiver of the issue," *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768-769; 887 NW2d 635 (2016). In either event, though, the result is the same: "[T]his Court will refuse to consider issues for which the appellant failed to produce the transcript." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 151-152; 715 NW2d 398 (2006). "However, the Court may consider an issue if the transcript was not relevant to the issue on appeal or if the issue on appeal is simply one of law." *Kern v Kern-Koskela*, 320 Mich App 212, 230; 905 NW2d 453 (2017).

In this case, plaintiff argues that there were several errors committed by the trial court, with the end result that she lost the Saux Head property without sufficient recompense. Evidence regarding that issue was primarily introduced during a two-day evidentiary hearing before a referee. While the first day of the evidentiary hearing held on March 13, 2017 was apparently brief, the second day, which occurred on June 5, 2017, was scheduled to last for five hours. Additionally, the parties and the trial court have repeatedly referred to those hearings, evidence introduced during them, arguments made on the record, and testimony taken from at least plaintiff and an appraiser of the Saux Head property. Importantly, it was during that evidentiary hearing that arguments were first presented regarding whether plaintiff would be entitled to the fair-market value of the Saux Head property. The referee, as evidenced by the findings and recommendation issued on June 9, 2017, determined that plaintiff could not collect that sum of money, relying partially on a previous order of the trial court and partially on plaintiff's own testimony. While the trial court decided to reconsider various decisions of the referee, it did not reverse the referee's decision in that regard. Further, the parties did not introduce additional evidence or testimony, other than the amended judgment of divorce and the settlement agreement themselves, regarding plaintiff's entitlement to, and the calculation of, the fair-market value of the Saux Head property.

While we are lenient with respect to litigants who appear *in propria persona*, we note that a panel of this Court already ordered plaintiff to produce all of the transcripts for the proceedings

in this case, after she moved for permission to proceed on appeal with fewer than all of them.[3] Indeed, that order specifically noted that plaintiff's appeal would face dismissal if the appropriate transcripts were not provided to this Court.[4] Plaintiff also sought the same permission from the trial court, but was denied. Despite those orders being entered more than one year ago, plaintiff still has not provided the relevant transcripts.

While we sometimes will overlook the lack of transcripts to address purely legal issues, plaintiff's appeal regarding the Saux Head property presents a mixed question of fact and law. Particularly, plaintiff urges us to reverse the trial court's order determining that the parties' settlement agreement and the amended judgment of divorce did not contemplate defendant replacing the Saux Head property should it be lost to foreclosure on loans held by defendant. Despite the interpretation of the amended judgment of divorce being largely a legal issue, plaintiff has still deprived us of reviewing the transcript where the parties first argued it. Moreover, plaintiff asks for an order granting her $850,000, which is on the basis of an appraisal, but the testimony establishing that appraisal was introduced during the evidentiary hearing for which we do not have a transcript. Lastly, plaintiff asserts that the trial court relied on the referee's misunderstanding of her testimony regarding whether she had a year-round residence separate from the Saux Head property. Absent that testimony, we are unable to review the ultimate factual findings on which plaintiff relies.

In sum, plaintiff has asked us to set aside the judgment of the trial court, which included an adoption of the determination by the referee that plaintiff was not entitled to the replacement value of the Saux Head property. In addition to reversing that determination, plaintiff requests us to instruct the trial court to enter a judgment in her favor for $850,000, the fair-market value of the Saux Head property. Plaintiff requests that relief from this Court, but has repeatedly failed to follow orders by both this Court and the trial court to provide all of the relevant transcripts on appeal. Under MCR 7.210(B)(1)(a), as the appellant, plaintiff had the burden of doing that unless excused by order or stipulation. Because plaintiff has failed to comply with her duties under the court rules, we must dismiss this portion of plaintiff's appeal. See *Shinn*, 314 Mich App at 768-769; *PT Today*, 270 Mich App at 151-152.[5]

---

[3] *Mitchell v Mitchell*, unpublished order of the Court of Appeals, entered August 12, 2019 (Docket Nos. 346774 and 349209).

[4] *Id.*

[5] We do, however, have a sufficient record to determine that the trial court improperly limited plaintiff's collection of the money judgment against defendant. Specifically, the trial court ordered that plaintiff could not collect on her judgment until she proved that USAB had initiated collection of the deficiency judgment against her. The trial court's expressed intention in issuing the order was to ensure that she did not collect money for damages that she had yet to incur. However, the judgment and order providing the money judgment to plaintiff did not arise solely from the deficiency judgment. To the contrary, $15,000 of the judgment was related to moving fees, storage costs, and attorney fees in this case; and $23,800 was attributed to attorney fees plaintiff already spent in Case No. 13-51332-NZ. Thus, we reverse the trial court's order limiting plaintiff's

-6-

B. CALCULATION OF ATTORNEY FEES FROM CASE NO. 13-51332-NZ

Plaintiff argues that the trial court abused its discretion in refusing to award her all of her attorney fees in Case No. 13-51332-NZ, and alternatively, that the trial court miscalculated the portion of attorney fees associated with the foreclosure litigation. We disagree.

1. STANDARD OF REVIEW

We review de novo a trial court's interpretation or construction of a judgment of divorce. *Neville v Neville*, 295 Mich App 460, 466; 812 NW2d 816 (2012). "This Court reviews a trial court's award of attorney fees in a divorce action for an abuse of discretion." *Safdar v Aziz*, 327 Mich App 252, 267; 933 NW2d 708 (2019). "An abuse of discretion occurs when the result falls outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). However, "[f]indings of fact are reviewed for clear error." *Id*. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id*. at 267-268 (quotation marks and citation omitted).

2. LAW AND ANALYSIS

Plaintiff first argues that the trial court failed to enforce the terms of the amended judgment of divorce by refusing to award her all of her attorney fees, including those related to the fraud litigation, in Case No. 13-51332-NZ. The parties agree that the amended judgment of divorce was entered, in pertinent part, on the basis of their settlement agreement. This Court has held that, "judgments entered pursuant to the agreement of parties are in the nature of a contract." *Neville*, 295 Mich App at 466. In *Holmes v Holmes*, 281 Mich App 575, 593-595; 760 NW2d 300 (2008), this Court held that judgments of divorce incorporating a contract reached by the parties, including a settlement agreement reached in contemplation of divorce like in this case, must be applied according to generally held contract principles. The panel in *Holmes*, 281 Mich App at 593-594, provided the following guidance on interpreting such contracts and judgments:

> A contract must be interpreted according to its plain and ordinary meaning. *St Paul Fire & Marine Ins Co v Ingall*, 228 Mich App 101, 107; 577 NW2d 188 (1998). Our interpretation of contractual language is further guided by the following precepts:
>
> > Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning. [*Meagher v Wayne*

collection of the judgment, and remand with instructions to clarify the appropriate portion of the judgment regarding which plaintiff has already suffered damages.

*State Univ*, 222 Mich App 700, 721-722; 565 NW2d 401 (1997) (citations omitted).]

In *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005), the Supreme Court emphasized that courts must construe unambiguous contract provisions as written. "We reiterate that the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." *Id*.

In the present case, the parties do not dispute the words used in the settlement agreement and subsequent amended judgment of divorce. They do, however, differ regarding their interpretation of those words. Specifically, the parties agree that plaintiff was awarded the Saux Head property in the divorce. Further, the parties do not dispute that defendant was ordered to bear sole responsibility for payment of the loans secured by the Saux Head property, which included a business loan held by USAB. The amended judgment of divorce provided that should "there be any claim against the Plaintiff for the [USAB] loans, that the indemnity provisions will continue." Later, the amended judgment of divorce reiterated that defendant "shall [] be responsible for the payment of the loan balance to [USAB] for the [CFAB] loan, and shall hold the Plaintiff harmless, and defend and indemnify her therefore." Once again, after citing to the settlement agreement, the amended judgment of divorce noted "that the [Saux Head property] is additional collateral for the above loans by [USAB] to [CFAB]," that defendant "shall be responsible for the [USAB] loans to CFAB," and finally, that defendant "shall be responsible for these debts, and shall hold the Plaintiff harmless, and defend and indemnify her therefore."

Plaintiff asserts that the plain language used in the amended judgment of divorce can have no other meaning than requiring defendant to pay her attorney fees related to the fraud litigation. The amended judgment of divorce ordered defendant to "indemnify" plaintiff and to hold her harmless related to the USAB loan. Those terms are not further defined in the amended judgment of divorce or in the settlement agreement. "In an effort to determine the plain and ordinary meaning of words used in a contract, this Court may refer to dictionary definitions." *Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 213; 926 NW2d 865 (2018). In *Black's Law Dictionary* (11th ed), "indemnify" is defined as "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default[.]" That dictionary also defines "hold harmless" as "[t]o absolve (another party) from any responsibility for damage or other liability arising from the transaction[.]" *Id*. Our Supreme Court has noted that "indemnification" relates to "costs . . . that go toward remediation, or making a potentially injured party whole . . . ." *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 461; 550 NW2d 475 (1996). Similarly, this Court cited to *Webster's New World Dictionary of the American Language* (2d college ed), to define "indemnify" as " 'repayment or reimbursement for loss, damage, etc.; compensation.' " *Citizens Ins Co of America v Univ Physicians Group*, 319 Mich App 642, 649; 902 NW2d 896 (2017).

The trial court properly determined that defendant's duties under the amended judgment of divorce did not include the requirement that he pay for her unreasonable litigation. As discussed, indemnification is meant to "reimburse" a party or make them "whole." *American Bumper*, 452 Mich at 460; *Citizens Ins Co*, 319 Mich App at 649; *Black's Law Dictionary* (11th ed). More

specifically, to indemnify plaintiff, defendant was required to "reimburse [her] for a loss suffered because of a third party's or [his] own act or default[.]" *Id.* The record, as it exists, supports the trial court's determination that the loss suffered by plaintiff related to her and USAB's attorney fees involving plaintiff's fraud allegations and was not caused by defendant's default. See *id*. Instead, plaintiff's damages related to the fraud litigation was caused by her unwise decision to institute the litigation against USAB. Thus, defendant did not have the duty to indemnify plaintiff or hold her harmless for her losses in that respect.

Defendant's duty to defend also was not implicated because plaintiff initiated the litigation against USAB. While there may be instances where a duty to defend or to indemnify is implicated by a party bringing a lawsuit, such as plaintiff's request that the foreclosure by advertisement be set aside in this case, the fraud litigation did not fall under that umbrella. In the simplest terms, plaintiff was not defending against an error caused by defendant's default, she was attempting to better her position without respect to any error by defendant. Consequently, the trial court properly determined that attorney fees related to the fraud litigation were not collectible under the amended judgment of divorce. See *American Bumper*, 452 Mich at 460; *Citizens Ins Co*, 319 Mich App at 649; *Black's Law Dictionary* (11th ed).

Plaintiff alternatively argues that the trial court clearly erred in apportioning the attorney fees between the fraud and foreclosure components of the litigation. Plaintiff argues that the trial court improperly calculated attorney fees related to the foreclosure proceedings, relying on ratios and judicial notice of the USAB litigation instead of reasonableness and determining the work actually performed. Plaintiff is correct that, "[w]hen requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." *Safdar*, 327 Mich App at 268 (quotation marks and citation omitted). However, it is also incumbent upon the "party requesting attorney fees postjudgment [to] show that the fees were incurred and that they were reasonable." *Id*.

Plaintiff attempts to discredit the trial court's factual findings because the trial court did not engage in an analysis of what "fees were incurred and [whether] they were reasonable." *Id*. However, the record shows that plaintiff did not present any evidence that would have permitted the trial court to make that decision. Indeed, during the hearing, the trial court reiterated that it required evidence to determine what portion of the USAB case was related to the foreclosure litigation, as opposed to the fraud litigation. On the first day of the hearing, plaintiff provided only her own testimony, which constituted a rough estimate that her attorney and USAB's attorney spent about half of the litigation on matters related to foreclosure. When she was cross-examined, though, she stated on two separate occasions that she did not know how much time the attorneys spent on each matter. Defendant, on the other hand, presented expert witness testimony regarding reasonable attorney fees that would be spent in a typical foreclosure litigation. During that first day of the evidentiary hearing, the trial court indicated that it would take judicial notice of the file in 13-51332-NZ. Neither party objected to that decision.

On the day of the continued evidentiary hearing, plaintiff stated that she did not have any additional evidence. Similarly, defendant rested his case. The trial court, therefore, was left only with plaintiff's testimony, defendant's expert's testimony, and judicial notice of the file in Case No. 13-51332-NZ. Upon reviewing that file, the trial court disregarded plaintiff's testimony that half of the litigation was related to foreclosure, noting that a vast majority of the case was related

to plaintiff's allegations of fraud. The trial court also disregarded the testimony of defendant's expert, noting that his testimony was not helpful when the litigation between plaintiff and USAB was not typical. Thus, the trial court focused on the file in Case No. 13-51332-NZ, which has not been provided to us on appeal. In light of those facts, plaintiff has not provided any grounds for us to determine that the trial court clearly erred when calculating attorney fees on the basis of billing information in the other case file. Consequently, we must affirm the trial court's calculation, as we could not possibly have reason to form a definite and firm conviction that the trial court erred.[6] See *id*.

## C. DE NOVO HEARING REGARDING REFEREE'S FINDINGS

Plaintiff argues that the trial court erred by failing to hold a proper de novo review hearing of the referee's findings and recommendation. Because plaintiff waived this issue, we disagree.

Plaintiff contends that the trial court erred by failing to allow live testimony and presentation of evidence at the de novo hearing regarding the referee's findings and orders after the June 2017 evidentiary hearing.[7] Regardless of the veracity of plaintiff's recitation of the law, this issue has been waived because during the July 26, 2017 hearing, which was scheduled for a de novo review, plaintiff specifically agreed that the hearing would be limited to legal arguments. In pertinent part, plaintiff's attorney stated on the record that plaintiff had contacted the clerk "and ask[ed] that basically if this could be oral argument today anyways." The trial court agreed that no factual evidence was needed and the arguments commenced.

"A waiver is an intentional relinquishment or abandonment of a known right." *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 716; 916 NW2d 218 (2018) (citation omitted). Plaintiff engaged in an express waiver of her rights to introduce evidence and live

---

[6] In an attempt to escape that inevitable conclusion, plaintiff alleges that she only failed to produce additional evidence at the continued evidentiary hearing because the trial court wrongfully permitted her attorney to withdraw. We decline to consider that argument because it was not included in the statement of questions presented by plaintiff. See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013) ("A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief . . . ."). Even so, we have reviewed the record provided and determined that plaintiff's argument would require us to set aside the trial court's determination that plaintiff's attorney was credible that there had been a breakdown of the attorney-client relationship to the point that he could no longer continue on the case. We would decline to do so because we give "due deference to [the trial court's] superior fact-finding ability . . . ." *Berger v Berger*, 277 Mich App 700, 719; 747 NW2d 336 (2008). Thus, even if this issue was properly before use, it "fails because the trial court is in the best position to determine the credibility of witnesses." *Id*. at 708.

[7] Notably, plaintiff does not challenge the trial court's conduct in the evidentiary hearing. To the extent she has attempted to do so, we decline to consider those arguments because plaintiff raised them for the first time in her reply brief. See *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) ("[R]aising an issue for the first time in a reply brief is not sufficient to present the issue for appeal.").

testimony during the de novo hearing, as she claims she had a right. By announcing on the record that plaintiff specifically wanted the hearing to be only for oral arguments, the issue was waived. See *id*. "To hold otherwise would contravene the longstanding rule against a party harboring error as an appellate parachute." *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 96; 693 NW2d 170 (2005). Thus, because plaintiff waived the right she now seeks to enforce, she has not presented any ground for reversal. See *VHS Huron Valley Sinai Hosp*, 322 Mich App at 716.

## D. CONSTITUTIONAL ARGUMENTS

Plaintiff also argues on appeal that the trial court violated her constitutional rights to due process and equal protection under the law in destroying her interest in the Saux Head property without providing adequate recompense. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

"Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *Marik v Marik*, 325 Mich App 353, 358; 925 NW2d 885 (2018) (quotation marks and citation omitted). During the trial court proceedings, plaintiff made no argument regarding due process as it related to her loss of the Saux Head property. As to equal protection, plaintiff only raised that argument in her motion for reconsideration. Thus, neither issue has been preserved for our review. See *id*.; *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) ("Where an issue is first presented in a motion for reconsideration, it is not properly preserved."). Thus, while we would typically "review[] de novo questions of constitutional law," *Sheardown v Guastella*, 324 Mich App 251, 255; 920 NW2d 172 (2018), because these issues are unpreserved, our review is for plain error affecting plaintiff's substantial rights, *Wolford v Duncan*, 279 Mich App 631, 637; 760 NW2d 253 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re Smith Trust*, 274 Mich App 283, 285-286; 731 NW2d 810 (2007) (quotation marks and citation omitted), aff'd 480 Mich 19 (2008). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

### 2. DUE PROCESS

Plaintiff's constitutional right to procedural and substantive due process was not violated in this case.

Plaintiff argues that her constitutional rights were violated by the trial court's action of depriving her of the Saux Head property without due process of law. "The Due Process Clause provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]' " *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008), quoting US Const, Am XIV, § 1 (alteration in *Mettler Walloon*). "Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). Despite its flexibility, "at a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d

380 (2014). "The United States Supreme Court recently has held that 'due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ' " *In re Wayne Co Treasurer Petition*, 478 Mich 1, 9; 732 NW2d 458 (2007), quoting *Jones v Flowers*, 547 US 220, 226; 126 S Ct 1708; 164 L Ed 2d 415 (2006), quoting *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 2d 865 (1950).

Plaintiff makes an array of contentions that the trial court deprived her of the Saux Head property without providing an opportunity to be heard. In particular, plaintiff cites the trial court's August 2017 order, in which it held that it had previously decided that plaintiff was not entitled to recover the fair-market value of the Saux Head property at an earlier hearing. Plaintiff alleged that the trial court was incorrect, thereby barring her the opportunity to litigate the matter. Despite that conjecture from plaintiff, the record is rife with hearings, briefs, and evidence submitted to the trial court on the issue in question. Indeed, the record provides that there were four separate days of evidentiary hearings, two before a referee that were never provided to this Court, and two before the trial court. The record also shows that notices were sent to plaintiff and her attorney for each of those hearings. Plaintiff neither contends that she did not receive those notices, nor that there were particular hearings that she missed because of an error by the trial court.

In sum, plaintiff's bare allegation that she was not provided procedural due process regarding the trial court's decision that the fair-market value of the Saux Head property was not collectible is without merit. The record adequately supports that plaintiff was provided with more than sufficient "notice and an opportunity to be heard." *Bonner*, 495 Mich at 235. Further, there is nothing in the record to suggest that the trial court's actions violated the due-process requirement of "fundamental fairness." *Al-Maliki*, 286 Mich App at 485. Thus, the trial court did not violate plaintiff's constitutional right to procedural due process of law. See *id*.

Plaintiff also argues that her substantive due-process rights were violated. Recall that, "The Due Process Clause provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]' " *Mettler Walloon*, 281 Mich App at 197, quoting US Const, Am XIV, § 1 (alteration in *Mettler Walloon*). "But despite the clause's reference to process, the United States Supreme Court has interpreted this clause to guarantee more than fair process and to cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them . . . ." *Mettler Walloon*, 281 Mich App at 197 (quotation marks, citations, and alterations omitted). Similarly, our Supreme Court has held "that analysis of substantive and procedural due process involves two separate legal tests." *Bonner*, 495 Mich at 223-224. In analyzing a substantive due-process claim, the "first and most essential [question is] . . . whether the interest allegedly infringed by the challenged government action . . . comes within the definition of life, liberty or property." *Id*. at 225 (quotation marks omitted).

Plaintiff does contend that her ownership of real "property" was infringed by the trial court's actions. However, plaintiff fails to identify a "government action[]" that was barred "regardless of the fairness of the procedures used to implement them[.]" *Mettler Walloon*, 281 Mich App at 197 (quotation marks, citations, and alterations omitted). Instead, plaintiff once again focuses on the procedures in the case, which she claims were faulty, barring her an opportunity to litigate the issue in question. The fact of the matter is that, assuming appropriate process, trial courts are well within their rights to decide legal questions that result in the loss of real property.

In this specific case, the trial court spent three years of hearings ensuring that plaintiff was provided with more than adequate time to prepare her case regarding application of the terms of the amended judgment of divorce to the situation involving the Saux Head property. The trial court considered all of the evidence, testimony, and argument provided by plaintiff. In the end, though, even disregarding whether the trial court's legal decision was incorrect under the law, there was no evidence that the trial court engaged in an activity that would be "barred regardless of the fairness of the procedures used to implement them . . . ." *Id*. (quotation marks, citations, and alterations omitted). Thus, plaintiff's claim of a violation of her substantive due-process rights is without merit.

### 3. EQUAL PROTECTION

The trial court did not violate plaintiff's right to equal protection under the law.

Plaintiff contends that the trial court violated the Equal Protection Clause, resulting in her loss of the Saux Head property without a replacement of the fair-market value of that asset. "The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law." *Electronic Data Sys Corp v Flint Twp*, 253 Mich App 538, 551; 656 NW2d 215 (2002), citing US Const, Am XIV; Const 1963, art 1, § 2. Our Supreme "Court has found Michigan's equal protection provision coextensive with the Equal Protection Clause of the federal constitution." *Crego v Coleman*, 463 Mich 248, 258; 615 NW2d 218 (2000). "The Equal Protection Clause requires that all persons similarly situated be treated alike under the law." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010).

It is difficult to decipher from plaintiff's brief what exactly the trial court did to treat her unequally under the law. Having reviewed plaintiff's arguments in detail, it appears as though plaintiff has alleged she was treated differently than all other divorce litigants in the Marquette Circuit Court because she was involved in a case with USAB. Plaintiff further alleges that one of USAB's attorneys was appointed as a judge in the Marquette Circuit Court, purportedly giving the trial court reason to mistreat plaintiff. Plaintiff does not allege that the trial court judge appointed to this case was the former USAB attorney. Other than her assertion that the trial court legally erred in refusing to award her the fair-market value of the Saux Head property, she has not provided any evidence that she was treated any differently than any other litigant in the Marquette Circuit Court.

"When reviewing the validity of state legislation or other official action that is challenged as denying equal protection, the threshold inquiry is whether plaintiff was treated differently from a similarly situated entity." *Shepherd Montessori Ctr Milan*, 486 Mich at 318. Stated differently, a claim under the Equal Protection Clause, at its essence, requires some proof that a person was treated differently by the government than others who are similarly situated. *Id*. Because plaintiff has failed to identify any other person or entity that was treated differently than her, she has failed to meet "the threshold inquiry" of the analysis under the Equal Protection Clause. See *id*. There simply is no evidence on the record that the trial court purposefully erred when handling plaintiff's case and would not have done so for any other divorce litigant in Marquette County. Consequently, this issue is without merit.

In this appeal, plaintiff contends that the trial court committed an array of errors, including violation of certain constitutional rights, by failing to provide full retroactive effect to the trial court's order rescinding the temporary spousal support order.  Considering plaintiff's failure to provide relevant transcripts, we have no other choice but to dismiss this appeal.

As already discussed, "[t]he appellant is responsible for securing the filing of the transcript as provided in this rule."  MCR 7.210(B)(1)(a).  When an appellant fails to do so, and has not been excused from the responsibility of doing so, we "will refuse to consider issues for which the appellant failed to produce the transcript." *PT Today*, 270 Mich App at 151-152.  To fully illustrate our reason for dismissing the appeal, it is important to understand that all of plaintiff's arguments in this appeal rely on a finding that the trial court erred and defendant acted improperly in regards to spousal support.

The amended judgment of divorce ordered defendant to pay plaintiff $3,000 of spousal support per month.  The amended judgment of divorce indicated that the amount was modifiable.  In January 2016, defendant moved the trial court to reduce the spousal support amount, citing a change of circumstances involving his loss of income and plaintiff's recent legal settlement and inheritance.  In February 2016, the trial court preliminarily determined that defendant's income had decreased to an amount that required spousal support to be reduced to $2,600 per month beginning March 1, 2016.  However, the trial court's order specifically indicated that it was subject to retroactive modification after an evidentiary hearing on the issue.

Originally, the evidentiary hearing regarding that motion was scheduled shortly after the temporary reduction of spousal support went into place.  The evidentiary hearing was the subject of several adjournments, two of which were related to defendant's failure to respond to plaintiff's discovery requests, and one of which was related to defendant hiring new counsel.  A separate adjournment, rescheduling the evidentiary hearing from October 2016 to February 2017, was on the basis of the parties' stipulation.  The parties then stipulated to another adjournment, and agreed that the motion would be heard before a referee on March 7, 2017.[8]  When that hearing finally occurred, the parties and the trial court contend that defendant voluntarily withdrew his motion to permanently reduce spousal support.  Plaintiff has not, however, provided the transcript of that hearing to this Court on appeal.  There also appears to be an allegation that the spousal support issue was again discussed at a hearing held on March 13, 2017, also before the referee.  Once again, though, plaintiff has not provided a transcript of that hearing to this Court.  The orders issued after those hearings do not reference defendant's spousal support motion being withdrawn, and do

---

[8] Considering this stipulation, plaintiff has waived any alleged error on behalf of the trial court for assigning the issue of spousal support to a referee in violation of MCL 552.507(2)(a), which provides that "[a] referee may . . . [h]ear all motions in a domestic relations matter, except motions pertaining to an increase or decrease in spouse support . . . ."  See *VHS Huron Valley Sinai Hosp*, 322 Mich App at 716 ("A waiver is an intentional relinquishment or abandonment of a known right.").  Additionally, because the referee never actually heard the motion, which was voluntarily withdrawn by defendant before being litigated before the referee, any error in referring the spousal support issue to the referee was harmless.  See MCR 2.613(A).

not provide any guidance regarding the effect of the withdrawal. Thus, despite defendant's apparent withdrawal of the issue, the temporary order reducing spousal support remained in place until plaintiff moved for rescission of that order and retroactive enforcement of the rescission in March 2019.

When considering that motion, the trial court partially relied on the fact that the issue was apparently raised and discussed on the record on March 7, 2017. The trial court noted that plaintiff produced and submitted a proposed order after that hearing, which did not reference the spousal support issue or contain a term regarding rescission of the temporary order. After determining that there was no fraudulent or malicious behavior on behalf of either party, the trial court weighed the equities regarding to what extent the rescission of the temporary award should be made retroactive. Ultimately, the trial court decided to split the difference, restoring defendant's duty to pay $3,000 of spousal support as of September 1, 2017. This meant that defendant, when the trial court's order was entered in April 2019, had the benefit of the $2,600 monthly payment for 18 months, and would be ordered to pay arrearages for the preceding 20 months.

Plaintiff contends that the trial court erred by refusing to make the rescission of the spousal support award fully retroactive to the day the temporary reduction began. Interestingly, the only time the spousal support motion was discussed on the record before the hearings in 2019, was during the two March 2017 hearings before the referee. Despite that fact, plaintiff has chosen not to provide those transcripts to this Court. This occurred despite our order requiring plaintiff to provide *all* of the transcripts from the trial court proceedings.[9] We even indicated that plaintiff's appeal would be subject to dismissal if she failed to comply with the order. The trial court also denied plaintiff's motion to proceed on fewer than all of the transcripts.

Plaintiff's arguments require this Court to engage in an analysis of the propriety of the trial court's actions related to the parties' behavior involving the spousal support litigation. From a review of the record, it appears that the most pertinent event related to that issue occurred at the March 7, 2017 hearing when defendant apparently voluntarily withdrew his motion to reduce spousal support, and at the March 13, 2017 hearing when the motion apparently was discussed again. Because those transcripts have not been provided, we do not know what exactly was said during those hearings. This is particularly troubling in this appeal because, as discussed earlier, plaintiff has raised several issues on appeal that she either specifically stipulated to (referring spousal support to a referee) or requested (limiting the de novo hearing to legal arguments) during proceedings before the trial court. Consequently, we are unable to determine whether such might have occurred during that hearing as well.

In sum, because the transcripts were relevant to the issues presented and the issues were not merely ones of law, we simply cannot overlook plaintiff's failure to provide those transcripts. See *Kern*, 320 Mich App at 230. Instead, we have no other option but to dismiss plaintiff's appeal related to the trial court's order rescinding the temporary spousal support reduction with only

---

[9] *Mitchell v Mitchell*, unpublished order of the Court of Appeals, entered August 12, 2019 (Docket Nos. 346774 and 349209).

partial retroactivity, because plaintiff has not complied with her duty to provide us with a complete record. See *PT Today*, 270 Mich App at 151-152; see also MCR 7.210(B)(1)(a).

## IV. CONCLUSION

The appeal in Docket No. 349209 is dismissed.

The appeal in Docket No. 346774 is dismissed in part, reversed in part, affirmed in part, and remanded for the trial court to clarify its October 30, 2018 order limiting plaintiff's collection of judgment. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron