**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JUNE 18, 2010

STATE OF MICHIGAN

SUPREME COURT

SHEPHERD MONTESSORI CENTER
MILAN, a Michigan not for profit
corporation,

Plaintiff-Appellee,

v

No. 137443

ANN ARBOR CHARTER TOWNSHIP,
ANN ARBOR CHARTER TOWNSHIP
ZONING OFFICIAL, and ANN ARBOR
CHARTER TOWNSHIP ZONING BOARD
OF APPEALS,

Defendants-Appellants.

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

At issue is whether defendants violated plaintiff's right to equal protection by denying a request for a zoning variance. We hold that defendants' denial of plaintiff's variance request does not violate equal protection principles because plaintiff has not met the threshold burden of proof for its equal protection challenge by showing disparate treatment of similarly situated entities based on religion. Accordingly, we reverse the

Court of Appeals judgment and reinstate the trial court's order granting defendants' motion for summary disposition.

## I. FACTS AND PROCEEDINGS

This case originates from a zoning dispute in Ann Arbor Township. The property at issue is zoned as an office park (OP) district pursuant to the township zoning ordinance, and is located within Domino's Farms office complex. Among the uses permitted in the township's OP zoning district are daycare facilities for use by children of office park employees. Rainbow Rascals, a former tenant of Domino's Farms, had operated a 100-child-capacity secular preschool daycare facility in the office park limited to children of office park employees. In 1991, Domino's Farms, on behalf of Rainbow Rascals, applied to Ann Arbor Township for a variance to allow children whose parents did not work at the Domino's Farms office complex to attend the Rainbow Rascals daycare. The township's Zoning Board of Appeals (ZBA) granted the requested variance.

In 1998, plaintiff Shepherd Montessori opened a Catholic preschool daycare facility in this same office park complex. The facility was originally limited to children of office park employees. Thereafter, Domino's Farms applied to Ann Arbor Township for a variance to allow children whose parents did not work at the office park to attend Shepherd Montessori's facility, a variance virtually identical to the one granted to Rainbow Rascals. The ZBA again granted the requested variance.

In 2000, Rainbow Rascals moved out of the office park, and Shepherd Montessori proposed to move into the vacated space and operate a K-3 primary school program.

Shepherd Montessori sent a letter to the township's zoning administrator describing the proposal. The zoning administrator denied plaintiff's proposed use of the property, explaining that the operation of a primary school is not a permitted use within an OP district as designated in the township's zoning ordinance. Plaintiff filed a petition with the ZBA seeking in the alternative either (1) reversal of the zoning administrator's decision, (2) a use variance, or (3) a determination that plaintiff's proposed use of the property can be considered a "substituted use" of the prior "nonconforming" Rainbow Rascals daycare program.

The ZBA held a hearing on plaintiff's petition. During the hearing, plaintiff's attorney asserted that plaintiff should receive special consideration because its primary school would have a religious component that would be a use favored by the Constitution. One ZBA member questioned plaintiff's attorney regarding this assertion and inquired whether counsel believed that plaintiff "has some additional right to relief that she [sic] would not have as a nonsectarian private school without a religious affiliation based on the Constitution." Plaintiff's attorney responded that he believed plaintiff is afforded additional rights under the Constitution, which favors education and religion.

At the conclusion of the hearing, the ZBA indicated that it agreed with the zoning administrator's decision and denied plaintiff's request because a primary school is not a permitted use within an OP district as designated in the township's ordinance. The ZBA also ruled that plaintiff's proposed nonconforming primary school use could not be substituted for Rainbow Rascals' use of the property because the daycare was a permitted

use whereas a school is not. Finally, the ZBA voted to deny plaintiff's request for a use variance to operate a primary school in the OP district because plaintiff did not prove that without the variance, there could be no other viable economic use of the property. The vote on all three issues was unanimous.

Plaintiff sued the township, alleging, among other things, that its equal protection rights were violated by defendants' denial of the variance request.[1] The matter currently

---

[1] This matter has been pending in the courts since 2000. The procedural history is complex. Plaintiff initially filed a lawsuit alleging violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 USC 2000cc *et seq.*, substantive due process, procedural due process, and equal protection. The parties filed cross-motions for summary disposition.

The trial court ruled that plaintiff had no claim under RLUIPA and also dismissed plaintiff's constitutional claims. Plaintiff appealed in the Court of Appeals, and the Court of Appeals reversed the trial court's grant of summary disposition on plaintiff's RLUIPA and equal protection claims and remanded to the trial court for further proceedings. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp (Shepherd I)*, 259 Mich App 315; 675 NW2d 271 (2003). The township filed an interlocutory application for leave to appeal to this Court, which was denied. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 471 Mich 877 (2004).

In 2006, on remand the parties again filed cross-motions for summary disposition on the RLUIPA and equal protection claims. The trial court granted defendants' motion and denied plaintiff's. Plaintiff once again appealed the decision in the Court of Appeals, which reversed the trial court's opinion and order granting defendants' motion for summary disposition and remanded for entry of judgment in favor of plaintiff and for reversal of the ZBA's denial of plaintiff's variance request. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp (Shepherd II)*, 275 Mich App 597; 739 NW2d 664 (2007). The Court of Appeals concluded that plaintiffs had established a substantial burden on religious exercise to support the RLUIPA claim and also held in favor of plaintiff's equal protection claim. Defendants filed a motion for reconsideration in the Court of Appeals, which the Court denied. Plaintiff filed a motion for sanctions against defendant, arguing that defendant's motion for reconsideration was vexatious under MCR 7.216(C). The Court of Appeals agreed, awarding plaintiff costs and attorney fees in an amount to be determined by the trial court.

before us addresses plaintiff's equal protection challenge. On the most recent remand from this Court, the Court of Appeals affirmed its prior decision that the defendants' application of the zoning ordinance violated the Equal Protection Clause. Applying the strict scrutiny standard of review, the panel held that defendant "treated a secular entity more favorably than plaintiff, a religious entity," and that defendant offered no evidence to show that the denial of plaintiff's variance was "precisely tailored to achieve a compelling governmental interest." The Court of Appeals remanded the case to the trial court for entry of a judgment in favor of plaintiff.[2] Defendants filed an application for leave in appeal to this Court, and we granted defendants' application limited to consideration of "(1) whether the Court of Appeals applied the correct standard of review in determining that the defendants violated the plaintiff's right to equal protection; and

Defendants filed applications for leave to appeal in this Court, challenging *Shepherd I* and *Shepherd II* and the Court of Appeals order imposing sanctions against defendants. On March 28, 2008, this Court vacated the judgment of the Court of Appeals in *Shepherd II*, reversed the order awarding plaintiff sanctions for a vexatious motion for reconsideration, and remanded the case to the Court of Appeals for reconsideration in light of *Greater Bible Way Temple of Jackson v City of Jackson*, 478 Mich 373; 733 NW2d 734 (2008). *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 480 Mich 1143 (2008).

On remand, the Court of Appeals applied this Court's decision in *Greater Bible Way* and held that the trial court had correctly granted summary disposition in favor of defendants on the RLUIPA claim. However, the Court of Appeals also held that the remand order did not alter its prior ruling that defendants' application of the zoning ordinance violated the Equal Protection Clause, and the Court remanded the case to the trial court for entry of a judgment in favor of plaintiff. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp (On Remand) (Shepherd III)*, 280 Mich App 449; 761 NW2d 230 (2008).

[2] *Shepherd III*, 280 Mich App 449.

(2) whether the defendants violated the plaintiff's right to equal protection in denying the plaintiff's request for a variance."[3]

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is a question of law, which this Court reviews de novo.[4] Underlying constitutional issues are also reviewed de novo by this Court.[5]

## III. ANALYSIS

At issue in this case is whether defendants' denial of plaintiff's zoning variance request was constitutionally permissible. In order to resolve this issue, we apply the following principles of equal protection law.

The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law.[6] This Court has held that Michigan's equal protection provision is coextensive with the Equal Protection Clause of the United States Constitution.[7] The Equal Protection Clause requires that all

---

[3] *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 483 Mich 1131 (2009).

[4] *Haynes v Neshewat*, 477 Mich 29, 34; 729 NW2d 488 (2007).

[5] *Sidun v Wayne Co Treasurer*, 481 Mich 503, 508; 751 NW2d 453 (2008).

[6] Const 1963, art 1, § 2; US Const, Am XIV.

[7] *Harvey v State of Mich*, 469 Mich 1, 6; 664 NW2d 767 (2003). The Court explained:

> By this, we do not mean that we are bound in our understanding of the Michigan Constitution by any particular interpretation of the United States Constitution. We mean only that we have been persuaded in the past

6

persons similarly situated be treated alike under the law.[8] When reviewing the validity of state legislation or other official action that is challenged as denying equal protection, the threshold inquiry is whether plaintiff was treated differently from a similarly situated entity.[9] The general rule is that legislation that treats similarly situated groups disparately is presumed valid and will be sustained if it passes the rational basis standard of review: that is, the classification drawn by the legislation is rationally related to a legitimate state interest.[10] Under this deferential standard, "the burden of showing a statute to be unconstitutional is on the challenging party, *not* on the party defending the statute[.]"[11]

However, when legislation treats similarly situated groups disparately on the basis of a suspect classification, such as race, alienage, or national origin, or infringes on a fundamental right protected by the Constitution, such as the free exercise of religion, the

---

that interpretations of the Equal Protection Clause of the Fourteenth Amendment have accurately conveyed the meaning of Const 1963, art 1, § 2 as well. [*Id.* at 6 n 3.]

[8] *City of Cleburne v Cleburne Living Ctr, Inc*, 473 US 432, 439; 105 S Ct 3249; 87 L Ed 2d 313 (1985).

[9] *Watson v Williams*, 329 Fed Appx 193, 196 (CA 10, 2009) (citing *City of Cleburne*, 473 US at 439, for the proposition that an equal protection claim "requires a threshold allegation that the plaintiff was treated differently from similarly situated individuals"); *Gilmore v Douglas Co*, 406 F3d 935, 937 (CA 8, 2005) ("As a threshold matter, to establish the particular equal protection claim alleged by [the plaintiff], she must establish that some government action caused her to be treated differently from others similarly situated.").

[10] *City of Cleburne*, 473 US at 440.

[11] *New York State Club Ass'n, Inc v City of New York*, 487 US 1, 17; 108 S Ct 2225; 101 L Ed 2d 1 (1988).

7

legislation will only be sustained if it passes the rigorous strict scrutiny standard of review: that is, the government bears the burden of establishing that the classification drawn is narrowly tailored to serve a compelling governmental interest.[12]

If entities are treated differently on the basis of the quasi-suspect classes of gender and illegitimacy, intermediate scrutiny applies, and the burden is on the government to show that the classification serves important governmental objectives and that the means employed are substantially related to the achievement of those objectives.[13]

The ordinance in question is indisputably facially neutral in that it does not, on its face, treat religious and secular entities differently. Here, plaintiff complains that, in applying the ordinance, the township treated it differently from one other entity: Rainbow Rascals. The United States Supreme Court allows such "class of one" claims to be brought, but requires a plaintiff to show that it was actually treated differently from others similarly situated and that no rational basis exists for the dissimilar treatment.[14] The Court of Appeals erred in concluding that strict scrutiny applied to plaintiff's equal

---

[12] *City of Cleburne*, 473 US at 440.

[13] *Craig v Boren*, 429 US 190, 197; 97 S Ct 451; 50 L Ed 2d 397 (1976).

[14] *Village of Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Congregation Kol Ami v Abington Twp*, 309 F3d 120, 133 (CA 3, 2002) ("[L]and use ordinances that do not classify by race, alienage, or national origin, will survive an attack based on the Equal Protection Clause if the law is 'reasonable, not arbitrary' and bears 'a rational relationship to a (permissible) state objective.'"), quoting *Village of Belle Terre v Boraas*, 416 US 1, 8; 94 S Ct 1536; 39 L Ed 2d 797 (1974) (quotation marks omitted).

protection claim because, as discussed below, defendants' actions did not substantially burden plaintiff's free exercise of religion.[15]

In order to determine whether plaintiff's equal protection rights were violated, we begin by analyzing the threshold inquiry for an equal protection challenge, that being whether plaintiff was treated differently from a similarly situated entity. Plaintiff asserts that Rainbow Rascals and plaintiff are similarly situated and that defendants treated them differently. Plaintiff argued that defendants conceded Rainbow Rascals and plaintiff were similarly situated by stating in their brief that "[t]he similarity of the two entities is not in dispute." The Court of Appeals agreed and used this statement as the basis for holding that Rainbow Rascals and plaintiff were similarly situated. In reaching its conclusion, the Court stated:

> *Defendants conceded that plaintiff and Rainbow Rascals were similarly situated*, and defendants failed to offer a reason for refusing to permit plaintiff to operate its school in the same space that Rainbow Rascals had operated its day care program.
>
> * * *
>
> Thus, we hold that defendants have treated a secular entity more favorably than plaintiff, a religious entity. . . . Accordingly, the trial court erred when it failed to grant summary disposition to plaintiff. [*Shepherd III*, 280 Mich App at 455-456 (citation and quotation marks omitted; emphasis added).]

---

[15] The Court of Appeals also held that defendants' denial of plaintiff's variance request does not substantially burden plaintiff's religious exercise, and plaintiff has not appealed that decision.

9

A review of the relevant document demonstrates that defendants' statement has been taken out of context. More importantly, this argument focuses the inquiry on an irrelevant factor. Defendants' brief states:

> The similarity of the two entities is not in dispute. Defendants' treatment of these entities is the real issue, and in truly comparable situations defendants did not treat plaintiff differently.

While plaintiff argues that this is a concession that the entities are similarly situated, defendants' statement only sets forth that the entities are similar to the degree that they both operate daycare facilities. However, the relevant inquiry in this instance focuses on Shepherd Montessori's current variance request as compared to Rainbow Rascals's previously granted requests.

In determining whether plaintiff and Rainbow Rascals are similarly situated entities that were treated differently, we must examine their respective variance requests. Plaintiff's current request is for a variance to operate a K-3 primary school. Under the OP district rules, primary school education is not a permitted use. Historically, both Rainbow Rascals and plaintiff have operated daycare facilities, not primary schools. Rainbow Rascals originally operated its daycare facility for children of office park employees only. It requested a variance to expand the daycare operation to include children whose parents did not work in the office park. The township granted that variance. When Shepherd Montessori initially commenced its daycare operation, it was similarly limited to children of office park employees. Eventually, Shepherd Montessori made the same request as Rainbow Rascals: to expand operations to permit children whose parents were not office park employees to use the facility. The township granted

10

this request, just as it had for Rainbow Rascals. Thus, when Rainbow Rascals and plaintiff made the same request, defendants treated the two entities the same and granted both requests.

In contrast, plaintiff's current request is to operate a primary school. There is no question that a primary school is *not* a permitted use in an OP district. Rainbow Rascals has never made a request for a variance to operate a primary school. Plaintiff does not allege that any other entity has ever made a request to operate a primary school in an OP district, or that any request to operate a primary school in an OP district has ever been granted. Thus, the record indicates that plaintiff is making a request that no entity has made before. Operating a daycare facility is not the same as operating a primary school. This OP district is simply not zoned for primary education. Thus, the township's consideration of plaintiff's variance request cannot be compared to any other variance request because plaintiff has provided no evidence that anyone has ever made a similar request of the township. There simply is no other entity to compare it to. Given this fact, we cannot compare defendants' denial of plaintiff's variance request to operate a primary school to Rainbow Rascals's request, because they are not the same request. The township's consideration of different requests does not constitute different treatment of similarly situated entities.

Indeed, plaintiff is not seeking similar treatment; rather, plaintiff is asserting religion in an effort to obtain preferential treatment. However, the Equal Protection Clause does not require that plaintiff get better treatment than a secular entity. It only requires "equal" treatment, and that is exactly what plaintiff has received, because

nobody within the township has been allowed to operate a school in an OP district. The township is not forbidding plaintiff from operating a primary school; it is simply regulating where that school can be operated. If plaintiff wants to operate a school, it can do so; it just has to operate it on property that is zoned for schools. If plaintiff wants to use the property for child care, then it can operate a daycare center on the property. In other words, in the realm of the operation of primary schools and daycare centers, plaintiff has to follow the law like everyone else. This does not amount to differential treatment of similarly situated entities. Thus, because plaintiff has failed to demonstrate that it was treated differently from similarly situated entities, we need not apply the rational basis test to determine whether the zoning ordinance is rationally related to a legitimate state interest.[16]

Lastly, we address plaintiff's assertion that defendants discriminatorily applied the facially neutral zoning ordinance against it because of its religious affiliation, thereby treating it, a religious entity, differently from everyone else. As noted previously, it is not disputed that the zoning ordinance at issue in this case is facially neutral. "A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate" on the

---

[16] *Silver v Franklin Twp Bd of Zoning Appeals*, 966 F2d 1031, 1036-1037 (CA 6, 1992) ("The basis of any equal protection claim is that the state has treated similarly-situated individuals differently. Because [the plaintiff] does not claim an infringement of a fundamental right or discrimination against a suspect class, we would review the Board's actions using a rational basis test. . . . In this case, however, we need not even go so far as to apply the rational basis test because [the plaintiff] has failed to demonstrate that the Board treated him differently from similarly-situated individuals.").

basis of a suspect classification such as religion.[17]   A facially neutral law that only incidentally burdens a particular religious practice will not be held to discriminate on the basis of religion.[18]   A facially neutral law will not be held unconstitutional solely because it results in disproportionate impact; proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.[19]   Discriminatory intent or purpose can be inferred from the totality of relevant facts.[20]

Plaintiff argues that the *reason* defendants denied plaintiff a variance to operate a Catholic school is because of religious animus, and that this denial infringed on plaintiff's free exercise of religion.   In support of this argument, plaintiff asserts that the line of questioning regarding religion and preferential treatment by one of the ZBA members at the hearing shows that the ZBA members were biased against plaintiff's religion and that the variance was denied because of that bias.   The record, however, does not support this conclusion.   Plaintiff's attorney initially introduced the subject of plaintiff's religious

---

[17] *Washington v Davis*, 426 US 229, 241; 96 S Ct 2040; 48 L Ed 2d 597 (1976).

[18] See *Church of Lukumi Babalu Aye v City of Hialeah*, 508 US 520, 531; 113 S Ct 2217; 124 L Ed 2d 472 (1993).   See also *Employment Div v Smith*, 494 US 872, 878-879; 110 S Ct 1595; 108 L Ed 2d 876 (1990) (stating that an individual's religious beliefs do not excuse that person "from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate" and that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that the religion prescribes (or proscribes))."  (Citation and quotation marks omitted.)

[19] *Arlington Hts v Metro Housing Dev Corp*, 429 US 252; 264-265; 97 S Ct 555; 50 L Ed 2d 450 (1977).

[20] *Washington*, 426 US at 242.

affiliation during the ZBA hearing by intimating that plaintiff should receive "special consideration" because of its religious purpose. The minutes from the hearing describe the exchange as follows:

> [ZBA member] Laporte asked Attorney Davis about his initial presentation when he spoke about the Constitution and religious freedom. Laporte asked if the petitioner believed that she has some additional rights to the relief that she would not have as a non-sectarian private school without a religious affiliation based on the Constitution.
>
> Davis responded that he believes that the petitioner has rights afforded under the Constitution which do favor as a use education and religion. However, the petitioner is proceeding under Sec. 23.08,C of the Ordinance which allows for a substitution of use.
>
> On further questioning from Laporte, Davis stated that the petitioner believes she has the rights afforded to her that start with the US Constitution and the Michigan Constitution and as a property-owner tenant under the Township's zoning scheme. Davis stated that the Constitution has provisions that favor uses that promote education and religion.

ZBA member Laporte validly questioned plaintiff's attorney about the basis for the assertion that religious use should be favored over secular uses. Nothing in the exchange demonstrates bias against Catholics or Catholic primary education. The questions were asked to clarify plaintiff's attorney's own statements. Nothing in the minutes of the ZBA hearing supports the conclusion that the ZBA denied plaintiff the variance because of a bias against plaintiff's religious affiliation.

Furthermore, plaintiff's director, Naomi Corera, admitted that she could not cite any proof that religious bias existed:

> *Q.* And was there something said at that hearing that said, we are doing this because of your religious exercise or the religious component of your program?
>
> *A.* No.

14

*Q.* Did you ever hear of any such evidence or statements after the meeting for the application?

*A.* No.

*Q.* Where did you pick up that understanding [of anti-Catholic bias] if you didn't experience it there at that meeting?

*A.* *Here, there, just different places.*

*Q.* Is there any way that you can specify that? Did you have a conversation with any particular person about some sort of bias on the part of the township?

*Mr. Davis*: I think the witness is entitled to have her own belief without having reasons for it.

\* \* \*

*Q.* *Okay. So you can't point to any specific statements or any specific conversations?*

*A.* *I can't, no. I cannot point a finger at one person, no.*

[Emphasis added.]

Thus, this testimony clearly illustrates that there is no evidence to support plaintiff's claim of religious bias or animus. The burden of proof to demonstrate that religious bias or animus exists cannot be sustained by an assertion that a person's understanding comes from "[h]ere, there, just different places." As plaintiff has presented no evidence to support its claim, we cannot conclude that the ZBA's decision to deny its variance request was based on religious animus. Defendants did not discriminatorily apply the ordinance against plaintiff on the basis of religion.[21]

---

[21] Although we find no scintilla of evidence that defendants discriminatorily applied the ordinance against plaintiff on the basis of religion, we note that only one member of the ZBA questioned plaintiff regarding its request for preferential treatment based on religious affiliation. Notably, the ZBA's decision to deny plaintiff's variance

The ordinance here is generally applicable and prohibits *all* schools in the OP zoning district. Plaintiff has presented no evidence that defendants have not uniformly applied the ordinance. The ordinance deals with zoning regulation, which this Court has long recognized as a reasonable exercise of the state's police power to regulate for the public health, safety, and welfare.[22] While the ordinance in this case does affect plaintiff's religious exercise by prohibiting the opening of a Catholic school, the effect is only incidental. The ordinance at issue prohibits schools in an area that is zoned as an office park, which is a valid exercise of defendants' police power. Thus, although plaintiff's religious exercise is restricted because it is not being allowed to open a Catholic school, the restriction only incidentally burdens religious exercise because the ordinance contemplates that all schools should be disallowed in the OP district, not just religious ones.[23] Plaintiff is free to operate a Catholic school, but it must do so on

---

was a unanimous vote. Compare this case to *Mt Elliott Cemetery Ass'n v City of Troy*, 171 F3d 398 (CA 6, 1999), which held that a comment by the mayor of Troy that she would approve a new Catholic cemetery "over [her] dead body" did not demonstrate prejudice against Catholics and, since the mayor only represented one of the six votes against the rezoning request, the mayor's statement could not show that the city council's denial of the request was motivated by religious discrimination. *Id*. at 406. Given the Sixth Circuit's ruling in *Mt Elliott*, the ZBA member's comments could not have been a basis to prove that there was a discriminatory intent behind defendants' decision to deny plaintiff's variance request.

[22] See *Austin v Older*, 283 Mich 667, 674-675; 278 NW 727 (1938).

[23] Plaintiff additionally cites *Vineyard Christian Fellowship of Evanston, Inc v City of Evanston*, 250 F Supp 2d 961 (ND Ill, 2003), to support its argument that defendants in this case treated religious entities differently than secular counterparts. We find *Vineyard* unpersuasive and distinguishable. In *Vineyard*, the plaintiff, a religious institution, owned property within the defendant's city limits. The city zoning ordinance

property that is zoned for schools. There is no evidence supporting the claim that defendants denied plaintiff's variance request because of religious animus, and the variance denial does not substantially burden plaintiff's religious exercise.

For these reasons, we conclude that plaintiff was not treated differently from a similarly situated entity on the basis of religion, and plaintiff has not met the threshold burden for an equal protection challenge. As a result, the Court of Appeals erred by holding that defendants' denial of plaintiff's variance request violates equal protection principles.

## IV. CONCLUSION

We hold that defendants' denial of plaintiff's variance request does not violate equal protection principles because plaintiff has not met the threshold burden of proof for its equal protection challenge by showing disparate treatment of similarly situated entities, nor has plaintiff demonstrated that the variance was denied because of religious animus. Accordingly, we reverse the Court of Appeals judgment and reinstate the trial court's order granting defendants' motion for summary disposition.

KELLY, C.J., and CAVANAGH, WEAVER, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with HATHAWAY, J.

---

prohibited the plaintiff from using the property for religious worship, but allowed other cultural uses. *Vineyard* held that, although the ordinance did not single out a particular religious group, it nevertheless classified on the basis of religion because of its wholesale bar against religious worship. The court held that the church's equal protection rights were violated. Conversely, in the case before us, the ordinance prohibits all schools in the OP zoning district, religious and secular alike. Thus, the ordinance here does not classify on the basis of religion and the rationale in *Vineyard* is inapplicable.