*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

DUJUAN QUINN,

UNPUBLISHED
August 8, 2024

Plaintiff-Appellant,

v

No. 362356
Court of Claims
LC No. 22-000015-MM

STATE OF MICHIGAN and GOVERNOR,

Defendants-Appellees.

Before: N. P. HOOD, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Plaintiff, DuJuan Quinn, appeals by right the order granting summary disposition, pursuant to MCR 2.116(C)(8), in favor of defendants, the state of Michigan and Governor Gretchen Whitmer. Quinn, who was convicted of carjacking among other offenses, sought declaratory and injunctive relief challenging Michigan's carjacking statute as facially unconstitutional. The Court of Claims improperly dismissed on res judicata grounds. After considering the merits of Quinn's claims, we nonetheless conclude that it reached the correct outcome. We therefore affirm.

## I. BACKGROUND

This appeal arises out of Quinn's declaratory action, which arises out of Quinn's conviction of carjacking. In 2008, Quinn and at least two associates attempted to cash a stolen check at a bank. The attempt failed, and Quinn, who was the driver, drove off. During his flight, he struck a police car then fled on foot before forcibly removing a bystander from her vehicle and crashing it into a motorcyclist. Quinn's conduct left numerous people with serious physical and psychological injuries.

The prosecution charged Quinn with several crimes arising out of the incident,[1] including as is relevant here, carjacking, MCL 750.529a. Quinn, pleaded no contest pursuant to a *Cobbs*

---

[1] In addition to carjacking, Quinn was also convicted of failure to stop at the scene of an accident resulting in serious impairment of a body function or death, MCL 257.617(2), uttering and

-1-

agreement[2] under which the trial court capped his minimum sentence at 25 years' imprisonment with a fourth-offense habitual offender notice. The trial court noted that the *Cobbs* evaluation was significantly more lenient than would otherwise be appropriate, but offered it specifically to avoid inconveniencing out-of-state victim-witnesses. The trial court sentenced him as a fourth-offense habitual offender to 25 to 75 years' imprisonment on the carjacking charge. Quinn unsuccessfully sought leave to appeal his plea-based conviction in what was the first of five appearances before this court related to his 2008 convictions.[3]

Most recently, in 2019, Quinn, *in propria persona*, sought, and was denied, declaratory and injunctive relief in the Court of Claims, after which he appealed in this Court. In that case, Quinn challenged the constitutionality of MCL 791.233(1)(b) to (d) and MCL 791.234(1) to (5), asserting that the statutes violated equal protection and constituted cruel and unusual punishment. Those statutes provide in relevant part that "[a] prisoner sentenced to a term of years comes under the jurisdiction of the [Parole] Board when he or she has served the minimum sentence, adjusted for any good time or disciplinary credits." *In re Parole of Elias*, 294 Mich App 507, 511; 811 NW2d 541 (2011). Quinn's argument essentially was that prisoners with parolable life sentences became eligible for parole after 10 or 15 years and were entitled to a parole review every five years thereafter, whereas he would not become eligible for parole until he had served his minimum sentence of 25 years. He asserted that his ineligibility for parole after 10 or 15 years constituted

publishing, MCL 750.249, second-degree fleeing a police officer, MCL 750.479a(4)(a), and resisting and obstructing a police officer, MCL 750.81d(1). The sentencing judge imposed concurrent terms of 25 to 75 years' imprisonment for leaving the scene of an accident involving serious impairment, 5 to 25 years' imprisonment for uttering and publishing, 5 to 20 years' imprisonment for fleeing a police officer, and 3 to 15 years' imprisonment for resisting and obstructing, all as a fourth-offense habitual offender. Because Quinn was on parole when he committed these offenses, his 2008 sentences were consecutive to the remaining portion of the term of imprisonment imposed for his prior offense. MCL 768.7a(2). See *Quinn v Michigan*, unpublished per curiam opinion of the Court of Appeals, issued September 10, 2020 (Docket No. 350235), pp 1-2 (*Quinn I*).

[2] *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993). "A *Cobbs* agreement is an agreement in which a defendant agrees to plead guilty in reliance on the trial court's preliminary evaluation of the sentence to be imposed." *People v Brinkey*, 327 Mich App 94, 99; 932 NW2d 232 (2019).

[3] In Docket Nos. 285422, 307275, and 324709, Quinn filed delayed applications for leave to appeal his convictions or sentences. This Court denied leave in the first "for lack of merit in the grounds presented." *People v Quinn*, unpublished order of the Court of Appeals, entered June 17, 2008 (Docket No. 285422). This Court denied leave in the second "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v Quinn*, unpublished order of the Court of Appeals, entered May 7, 2012 (Docket No. 307275). This Court dismissed the third because Quinn failed to demonstrate entitlement to an exception to the general prohibition against successive motions for relief from judgment. *People v Quinn*, unpublished order of the Court of Appeals, entered February 23, 2015 (Docket No. 324709).

cruel and unusual punishment and a violation of equal protection. This Court rejected Quinn's arguments. *Quinn v Michigan*, unpublished per curiam opinion of the Court of Appeals, issued September 10, 2020 (Docket No. 350235) (*Quinn I*). The named defendants in that case were the same as the defendants in this case: the State of Michigan and Governor Whitmer.

Quinn filed his complaint in this matter in early 2022. This time, he challenged the constitutionality of the carjacking statute, MCL 750.529a. In relevant part, MCL 750.529a provides that carjacking is a felony punishable by imprisonment for a term of years or for life, and further specifies that a sentence for carjacking may be consecutive to other sentences arising out of the same transaction. See MCL 750.529a. Quinn argued that the statute was unconstitutional because it treats unarmed carjackers differently from other unarmed robbers. He specifically compared MCL 750.529a to MCL 750.530, which prohibits unarmed robbery and, according to Quinn, treated unarmed robbers less harshly. Quinn argued that, as a result, MCL 750.529a constituted cruel or unusual punishment, a violation of due process, and a violation of equal protection. Defendants moved for summary disposition, generally arguing that his claim was meritless and unsupported.

The Court of Claims dismissed the case on grounds never raised by defendants: that it was barred by collateral estoppel and res judicata.[4] The Court of Claims also commented that Quinn had failed to state a claim because he offered "no case law and limited argument in support," and he particularly failed to "overcome the presumption that statutes, like the ones to which plaintiff pled, are presumed to be constitutional." This appeal followed.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim, and it must be decided on the pleadings alone, accepting all factual allegations as true. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160. "Where summary disposition is granted under the wrong rule, Michigan appellate courts, according to longstanding practice, will review the order under the correct rule." *Spiek v Mich Dep't of Transp*, 456 Mich 331, 338 n 9; 572 NW2d 201 (1998). This Court will generally affirm a correct result, even if the lower court arrived at that result on the basis of erroneous reasoning. *Mich Farm Bureau v Dep't of Environment, Great Lakes, & Energy*, 343 Mich App 293, 314-315; 997 NW2d 467 (2022).

---

[4] We disagree with defendants' argument that the Court of Claims did not actually grant summary disposition on the basis of collateral estoppel or res judicata. The face of the Court of Claims's order plainly states otherwise. We also disagree with defendants' contention that Quinn failed to articulate whether he brings a facial or an as-applied challenge to the statute and that he failed to support his claim. Quinn clearly indicated that his was a facial challenge, and, irrespective of its merits, Quinn's brief in the Court of Claims contained extensive argument and citation to authority.

The interpretation and application of statutes, rules, and legal doctrines—including the doctrines of res judicata and collateral estoppel—is reviewed de novo. *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359681); slip op at 2. This Court also reviews de novo constitutional questions, including whether a party has been deprived of equal protection under the law, *Does 11-18 v Dep't of Corrections*, 323 Mich App 479, 485; 917 NW2d 730 (2018), and "[w]hether a defendant's sentence constitutes cruel and/or unusual punishment under the Eighth Amendment of the United States Constitution or Article 1, § 16 of the Michigan Constitution," *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022).

Parties appearing *in propria persona* are not excused from providing support for their claims, but they are entitled to more generosity and lenity in construing their pleadings than would be lawyers. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976). Incarcerated prisoners pursuing relief in their criminal matters without access to counsel are entitled to more lenity regarding procedural mistakes than are litigants proceeding without counsel in ordinary civil litigation. *McNeil v US*, 508 US 106, 113; 113 S Ct 1980; 124 L Ed 2d 21 (1993). Parties *in propria persona* are nevertheless otherwise held to the same substantive standards as lawyers. See *Totman v Sch Dist of Royal Oak*, 135 Mich App 121, 126; 352 NW2d 364 (1984).

## III. RES JUDICATA

At the threshold, we decline to apply the doctrine of res judicata to this case. Although we do not necessarily disagree with the Court of Claims's conclusion that the doctrine of res judicata barred Quinn's claims in this action, the issue remains unsettled,[5] and we question whether dismissal on the basis of preclusion was appropriate when defendants did not raise such grounds, and Quinn was not provided the opportunity to respond. See *Zelasko v Charter Twp of Bloomfield*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359002); slip op at 5-6; see also *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002), and *Detroit v Qualls*, 434 Mich 340, 357-358; 454 NW2d 374 (1990) (a party asserting entitlement to a preclusionary doctrine has the burden of proving its applicability). We therefore decline to apply preclusionary doctrines in this matter.

## IV. EQUAL PROTECTION

We reject Quinn's argument that the carjacking statute is facially unconstitutional because it violates equal protection. Because Quinn does not allege that he is a member of a protected class, the statute is subject to rational-basis review. We conclude that Quinn has not established that there is no rational basis for the Legislature to impose a harsher penalty for carjacking than for unarmed robbery.

---

[5] *Greenbrooke Parkhomes Condo Ass'n v Household Fin Corp III*, unpublished per curiam opinion of the Court of Appeals, issued March 13, 2012 (Docket No. 301516), p 2 (observing that courts "are reluctant to apply claim preclusion doctrines when questions of law are involved and causes of action do not arise form the same subject matter or transaction.").

Under the Michigan and United States Constitutions, all similarly situated persons must "be treated alike under the law." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010). See also *Grimes v Van Hook-Williams*, 302 Mich App 521, 532-533; 839 NW2d 237 (2013) ("Michigan's equal protection provision is coextensive with the Equal Protection Clause of the federal constitution.") (cleaned up). When a plaintiff claims to have been treated differently from a similarly situated entity, different degrees of scrutiny are applied, depending on whether the disparate treatment is based on a suspect classification, a quasi-suspect classification, or any other classification. *Id.* at 318-319. A classification may warrant elevated scrutiny if it is commonly a product of prejudice and "generally provides no sensible ground for differential treatment." See *Cleburne v Cleburne Living Ctr*, 473 US 432, 440; 105 S Ct 3249; 87 L Ed 2d 313 (1985). See also *Midwest Valve & Fitting Co v Detroit*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 358868); slip op at p 10. Suspect and quasi-suspect classifications include race, gender, alienage, national origin, and illegitimacy. *Shepherd Montessori*, 486 Mich at 318-319.

We have generally viewed the disparate treatment of individuals convicted of crimes "as not affecting a person's fundamental interests." *People v Konopka*, 309 Mich App 345, 368; 869 NW2d 651 (2015). In other words, unlike inherently suspect classes like race, ethnicity, and national origin, or classes subject to the intermediate substantial-relationship test, like gender and mental capacity, disparate treatment based on a criminal conviction generally does not implicate one's fundamental interests. See *id*. In the absence of a suspect or quasi-suspect classification, we will presume the allegedly discriminatory legislation to be constitutional, and the plaintiff has the burden of establishing that the legislation is not "rationally related to a legitimate state interest." *Shepherd Montessori*, 486 Mich at 318-319. To prevail, a plaintiff "must show that the legislation is arbitrary and wholly unrelated in a rational way to the objective of the statute." *Harvey v Michigan*, 469 Mich 1, 7; 664 NW2d 767 (2003) (internal quotation marks omitted). "Rational-basis review does not test the wisdom, need, or appropriateness of the legislation . . . or even whether it results in some inequity when put into practice." *Id.* (citation omitted). It just requires some nonarbitrary, logical connection to the objective of the statute. See *id.*

Quinn does not claim to be a member of a suspect classification or otherwise to be entitled to heightened scrutiny. The Legislature's decision to provide a harsher punishment for carjacking therefore need only be "rationally related to a legitimate state interest." *Shepherd Montessori*, 486 Mich at 318-319. But he has failed show that there is no rational basis for the different penalties.

In support, Quinn relies heavily on *People v O'Donnell*, 127 Mich App 749; 339 NW2d 540 (1983), but his support is misplaced. In *O'Donnell*, this Court considered two statutes: at the time, MCL 750.207 imposed a sentence of mandatory life imprisonment without parole for placing explosives with intent to destroy causing personal injury; and MCL 750.328 imposed a sentence of parolable life or a term of years for placing explosives with intent to destroy causing death. *O'Donnell*, 127 Mich App at 755-756. We observed that the elements of the two crimes were identical, differing only in the outcome. *Id*. at 756-757. Even that was questionable because death necessarily entailed personal injury, so the crime that imposed the greater penalty was arguably a lesser included offense of the crime that imposed the lesser penalty. *Id*. at 756-757. This Court emphasized that it was not troubled by the sentences for each crime, as such. *Id*. at 754-755, 757. But, there was "no rational explanation for the Legislature's decision to require a mandatory life sentence where a defendant's conduct results in only personal injury to the victim while permitting

-5-

a lesser sentence to be imposed where the same conduct results in death." *Id*. at 757. This Court therefore concluded that, under the circumstances of that case, "the disparate treatment mandated by the Legislature for persons convicted pursuant to these two statutory provisions lacks a rational basis." *Id*.

This case differs from *O'Donnell* in at least two ways: first, carjacking and unarmed robbery have different elements; and second, we can discern a rational basis for treating robbery of a car differently than other types of robbery. Carjacking is a specific-intent offense, requiring proof of intent to steal a motor vehicle, *People v Smith*, 336 Mich App 297, 305-306, 308-310; 970 NW2d 450 (2021), and proof of the use or threat of force or violence, *People v Cain*, 495 Mich 874, 874-875; 838 NW2d 150 (2013). Unarmed robbery is also a specific-intent crime, requiring proof of intent to steal property and proof of the use or threat of force or violence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).[6] This difference makes the punishment scheme at issue here the *opposite* of that at issue in *O'Donnell*. Here, it is the "special case" that is punished more harshly than the "necessarily lesser included" offense. The arbitrariness—or patent irrationality—that was present in *O'Donnell* is not present here.

Further, as defendants argue, it would not be unreasonable for the Legislature to have concluded that automobiles are of such great importance to the citizens of Michigan, and their theft sufficiently destructive to individuals and to society above and beyond harms caused by any other sort of forcible larceny, to warrant "special treatment," or a harsher penalty. We can question the wisdom of that conclusion, but it satisfies the requirement of a nonarbitrary, rational relationship to the legislative goal. Quinn, therefore, fails to establish that there is no rational basis for imposing a harsher penalty for carjacking than for unarmed robbery. We conclude that his equal-protection argument fails on its merits.

## V. CRUEL OR UNUSUAL PUNISHMENT

We also conclude that Quinn's cruel-or-unusual-punishment claim fails on the merits. The United States Constitution prohibits, in relevant part, " 'cruel *and* unusual punishments,' " whereas the Michigan Constitution prohibits, in relevant part, " 'cruel *or* unusual punishment.' " *Stovall*, 510 Mich at 313-314, quoting US Const, Am VIII, and Const 1963, art 1, § 16, respectively (emphasis added by the *Stovall* Court). Michigan's Constitution therefore provides broader protections than does its federal counterpart. *Id*. at 314. A statute that survives scrutiny under Const 1963, art 1, § 16 will necessarily also survive scrutiny under the Eighth Amendment, *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). Courts must presume that statutes are constitutional, and the party challenging the constitutionality of a statute must prove that the statute is invalid. *People v Adamowicz*, ___ Mich App ___, ___ n 1; ___ NW3d ___ (2023) (Docket No. 330612); slip op at 3 n 1.

In *People v Lorentzen*, 387 Mich 167; 194 NW2d 827 (1972), our Supreme Court first articulated several inquiries that were relevant to whether a sentence is cruel or unusual under

---

[6] The element of being unarmed is not a traditional element that must be affirmatively proved, but rather indicates that the prosecution need not prove that the defendant was armed. See *People v Wafer*, 509 Mich 31, 46; 983 NW2d 315 (2022).

Michigan's Constitution. See *Stovall*, 510 Mich at 314. See also *Lorentzen*, 387 Mich at 170-171 (addressing a 20-year minimum sentence imposed on a nonviolent, first-time offender for selling any quantity of marijuana without a license). Very generally, the Court concluded that although there were a wide variety of ways to articulate the principle, see *Lorentzen*, 387 Mich at 171-176, a punishment was "cruel or unusual" if it was disproportionate, meaning it was "in excess of any that would be suitable to fit the crime." *Id*. at 176. The Court then considered a wide variety of sentences imposed for other crimes involving the sale of harmful substances and a wide variety of sentences for crimes involving harm to others. *Id*. at 176-177. The compared offenses ranged from adulterating food to second-degree murder and rape; all but the latter imposed lesser sentences. *Id*. The Court concluded that the 20-year minimum sentence at issue was clearly disproportionate. *Id*. at 178. It then observed that what is believed to be cruel or unusual should not remain static, but rather should evolve with society, calling for consideration of penalties imposed for similar offenses in other jurisdictions. *Id*. at 178-179. Finally, the Court observed that Michigan had a well-established policy of considering rehabilitation when crafting sentences, and lengthy sentences seldom advanced that goal. *Id*. at 180-181. The Court also noted that it was concerned about the sentence being imposed "without consideration for [the] defendant's individual personality and history." *Id*. at 181.

The "four-part test adopted in *Lorentzen*" is distilled to a test that "assesses (1) the severity of the sentence imposed compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed on other offenders in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the penological goal of rehabilitation." *Stovall*, 510 Mich at 314. We consider each factor in turn.

## A. PROPORTIONALITY OF THE PENALTY TO THE CRIME

The first consideration is therefore whether the sentence imposed for carjacking, of "imprisonment for life or for any term of years," MCL 750.529a(1), is generally disproportionate to the gravity of the crime. Quinn's argument that the sentence is disproportionate relies heavily on the assertion that there is no statutory gradation for whether the offender is armed. But that is only one aspect of the proportionality analysis. As noted, the *Lorentzen* Court was concerned about a sentence being "imposed without consideration for [the] defendant's individual personality and history." *Lorentzen*, 387 Mich at 181. *Lorentzen* was decided in 1972, almost a decade before the judicial sentencing guidelines were first promulgated. See *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). Today, sentencing courts are required to consider the statutory sentencing guidelines when crafting a sentence. *People v Posey*, 512 Mich 317, 359-360; 1 NW3d 101 (2023). And although the guidelines are advisory, they guide sentencing courts, and sentence is presumed to be proportionate unless it departs from those guidelines. *Id*. at 360. See also *People v Odom*, 327 Mich App 297, 314-315; 933 NW2d 719 (2019). In practice, therefore, a sentence a defendant will actually receive for carjacking is not as indiscriminate (or as unconstrained) as the statute might suggest on its face. In other words, individualized sentencing is now the norm.

The nuances of the guidelines undercut Quinn's primary argument that there is no statutory gradation for when the offender is armed. The guidelines provide that carjacking is a Class A crime against a person. See MCL 777.16y. Offense Variable (OV) 2 must be scored for crimes against a person. See MCL 777.22(1). In turn, zero points are assessed for OV 2 if no weapon is

-7-

possessed or used by the offender, and increasing numbers of points are assessed depending on the dangerousness of any weapon possessed or used by the offender. MCL 777.32. Therefore, when the sentencing scheme is considered in its entirety, Michigan *does* craft differing advisory sentences based on whether, in relevant part, a carjacker was armed.

The sentencing scheme as a whole goes even further. For example, the trial court must also score OV 3 and OV 4, see MCL 777.16y. Those offense variables require assessment of different numbers of points based on the severity of physical and psychological injury caused to a victim by the offender. See MCL 777.33; MCL 777.34. In other words, the actual sentence a defendant will receive for carjacking will be based on considerations that include whether the defendant was armed, *how* the defendant was armed, and the degree to which the defendant injured anyone in the process of carrying out the crime.

Quinn's primary (or sole) argument under this consideration is the relatively vague assertion that carjacking requires no intent to commit a deadly or violent act. For support, he relies on two cases: *People v Bullock*, 440 Mich 15, 39; 485 NW2d 866 (1992), and *Coker v Georgia*, 433 US 584, 597-600; 97 S Ct 2861; 53 L Ed 2d 982 (1977). But neither case supports his argument. In *Bullock*, our Supreme Court observed that although mere possession of cocaine was dangerous and destructive, it did "not require any proof that the defendant committed, aided, intended, or even contemplated any loss of life or other violent crime, or even any crime against property," so it did not warrant mandatory life imprisonment without the possibility of parole. *Bullock*, 440 Mich at 39. Our Supreme Court held that a first-time offender for an intrinsically nonviolent offense did not warrant the most severe punishment possible in Michigan.[7] On the contrary, carjacking does involve the use or threatened use of force or violence and a specific intent to deprive someone else of valuable property, so it can hardly be deemed to be in the same category as simple drug possession. Further, unlike the charge in *Bullock*, carjacking is punishable by life or any term of years, not mandatory life without the possibility of parole, so it is not punishable by the harshest sanction possible in Michigan.

For this same reason, Quinn's reliance on *Coker* is misplaced. In *Coker*, the United States Supreme Court held that the crime of rape, however heinous, did not warrant the death penalty, although it did so in the context of generally suggesting that the death penalty was a unique punishment that should, at the most, be reserved for murderers. *Coker*, 433 US at 597-600. The United States Supreme Court addressed the uniquely extreme penalty of death for a crime that did not involve a killing. See *id.* As stated, carjacking is not even punishable by the harshest penalty in Michigan, let alone the death penalty. Put simply, *Bullock* and *Coker* involved situations in which there was an objectively obvious imbalance between the crime and the sanction. No such extreme imbalance is present here.

We further take notice, see MRE 201(b), that automobiles occupy a unique place in the lives of Michigan citizens. They are, for many people, an investment and a necessity akin to nothing short of owning a home. Many people view their automobiles as providing safety and privacy on the same spectrum as their homes. Our caselaw has recognized as much. See *People*

---

[7] Michigan has no death penalty. Const 1963, art 4, § 46. A nonparolable life sentence is, therefore, mathematically the harshest penalty a criminal sentencing court can mete out.

*v Mead*, 503 Mich 205, 215 n 3; 931 NW2d 557 (2019) (recognizing that individuals have a reasonable, albeit diminished, expectation of privacy in their automobiles). Few other possessions call for the same investment of funds or are as critical to a person's very ability to survive or to carry on the necessities of life. Quinn's attempts to diminish carjacking as little more than a minor variation on unarmed robbery, therefore, ring hollow. In fact, it is sensible that the Legislature would have regarded the theft of a person's automobile by force or threat of force to be a uniquely serious crime that calls for a greater penalty than would be warranted for robbery of any other item of personal property.

### B. THE PENALTY AS COMPARED TO OTHER MICHIGAN OFFENSES AND AS COMPARED TO OTHER STATES' CARJACKING STATUTES

The next considerations for cruel-or-unusual analyses involve a comparison to other crimes in Michigan and similar crimes in other jurisdictions. We reiterate that we are unpersuaded by Quinn's efforts to juxtapose carjacking and unarmed robbery. He argues that robbery statutes are directed at the social harm of using force rather than the taking of property per se. See *People v Williams*, 491 Mich 164, 182; 814 NW2d 270 (2012). But the Legislature may legitimately impose multiple punishments arising out of the same conduct in efforts to address different kinds of harms. See *People v Parker*, 230 Mich App 337, 343-344; 584 NW2d 336 (1998). There is no reason why the Legislature could not intend to address the social harm of using force against another person in one statute, while addressing the social harm of forcibly stealing automobiles in another statute, even if they are both based on the same physical acts. Quinn compares carjacking to ostensibly less-serious crimes, but he relies on a case that, again, addressed the prospect of a nonparolable life sentence for an objectively minor crime that was neither violent nor against a person, so it is no more applicable than the other cases on which he relies. See *Solem v Helm*, 463 US 277, 279-280, 296-297; 103 S Ct 3001; 77 L Ed 2d 637 (1983).

Quinn offers a list of statutes from other states that he regards as comparable, arguing that no other state punishes carjacking as severely as Michigan.[8] We observe that the New York equivalent of a habitual offender may be sentenced to up to life imprisonment for the New York equivalent of carjacking. See *People v Miles*, 49 App Div 3d 446, 447; 853 NYS2d 548 (2008). The New York sentencing situation is, therefore, less straightforward than Quinn suggests. Indeed, we expect that most states now have intricate sentencing schemes that, like Michigan and, apparently, New York, result in more individually tailored sentences than a penal statute alone might superficially suggest. Furthermore, automobiles occupy a unique place in the lives of Michigan citizens that may or may not match the experiences of citizens of other states, so we are disinclined to place much weight on whether other states tend to punish carjacking, or its equivalent, more leniently.

---

[8] Although Quinn does properly *cite* a number of statutes, he has not provided us with copies of any of those statutes, much less any analysis for those statutes. See MCR 7.212(C)(7). We conclude that this failure contravenes at least the spirit of the general rule that this Court will not perform a party's research on that party's behalf. See *Henderson v Dep't of Health and Human Servs*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359840); slip op at 6.

## C. DOES THE PENALTY ADVANCE THE GOAL OF REHABILITATION?

The final consideration is the extent to which a sanction furthers the goal of rehabilitation. Quinn argues that the severity of the punishment for carjacking appears to have little regard for rehabilitation. However, rehabilitation is only one factor to consider, and it should not be considered without regard to other needs, such as deterrence of similar crimes and protection of society from the offender. *Adamowicz*, ___ Mich App at ___; slip op at 4. Even a nonparolable life sentence still technically allows for the possibility of rehabilitation. *Id.* As noted, the actual sentence that will be imposed for carjacking will depend on far more than just whether the crime was committed. The fact that a sentence is harsh, therefore, is not dispositive. Quinn finally presents an argument generally regarding the evils of excessive incarceration. This is fundamentally a policy argument that must be directed to the Legislature rather than to the courts. *Wilmore-Moody v Zakir*, 511 Mich 76, 87; 999 NW2d 1 (2023). We reject Quinn's contentions that carjacking is not reasonably distinguishable from unarmed robbery and that the punishment for carjacking rises to the level of being cruel or unusual.

## VI. CONCLUSION

We affirm. The Court of Claims incorrectly relied on the doctrine of res judicata and collateral estoppel, issues not raised by the parties, and to which Quinn did not have an opportunity to respond. It nonetheless reached the correct outcome and disposed of this case. In light of the manner in which the Court of Claims disposed of this case, we direct that the parties shall bear their own costs on appeal. MCR 7.219(A).

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado